UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:25-cv-21746-ALTMAN

GAMES WORKSHOP LIMITED,

      Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE A,

      Defendants.

_____/

**PLAINTIFF'S MOTION FOR ENTRY OF FINAL DEFAULT JUDGMENT
AGAINST DEFENDANTS AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Plaintiff, Games Workshop Limited ("Plaintiff"), by and through its undersigned counsel, and pursuant to the Court's Order on Final Default Judgment Procedure (ECF No. 63), hereby moves for entry of final default judgment against Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on Schedule A, attached hereto (collectively, the "Defaulting Defendants"). In support thereof, Plaintiff submits the following Memorandum of Law.

**MEMORANDUM OF LAW**

**I.     INTRODUCTION**

Plaintiff initiated this action against Defendants through the filing of its Complaint [ECF No. 1] for trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement. The Defaulting Defendants, as set forth in Schedule A attached hereto, are in default, and the prerequisites for a default judgment have been met. As relief, Plaintiff seeks default judgment finding the Defaulting Defendants liable

on all counts of his Complaint. Plaintiff prays such judgment includes the entry of a permanent injunction and an award of damages to Plaintiff for the Defaulting Defendants' willful infringement pursuant to 15 U.S.C. § 1117(a). Plaintiff also requests the Court order the listings and associated images of the goods bearing counterfeits and/or infringements of Plaintiff's trademarks being used by the Defaulting Defendants be permanently removed to ensure the associated e-commerce marketplace stores may no longer be used as a means for selling goods bearing counterfeits and infringements of Plaintiff's trademarks, and infringing upon Plaintiff's intellectual property rights. Plaintiff further requests the Court cancel, or at Plaintiff's election, transfer the domain names at issue to ensure the associated websites may no longer be used as a means for selling goods bearing counterfeits of Plaintiff's trademarks, and infringing upon Plaintiff's rights.

## II.      FACTUAL BACKGROUND

### A.      Plaintiff's Rights

Plaintiff is the  ownerof the federally registered trademarks identified in Schedule B (the "Warhammer Marks") attached to the Declaration of MatthewsRoss Matthews in support of Plaintiff's *Ex Parte* Motion for Entry of Temporary Restraining Order, Preliminary Injunction and Order Restraining Assets ("MatthewsMatthews Decl.") [ECF No.6-2]. Matthews Decl., at ¶9-12. The Warhammer Marks are used in connection with the design, marketing, and distribution of various high-quality goods and merchandise relating to wargames and miniatures portraying a wide range of characters with a mixture of humans, aliens, and supernatural monsters, video games, mobile apps , and other products. *See* Matthews Decl. at ¶ 4, 12. The Warhammer Marks are a symbol of Plaintiff's quality, reputation, and goodwill and the Warhammer Marks have never been abandoned. *Id*. at ¶¶ 12-14. Moreover, Plaintiff have expended substantial time, money, and

other resources developing, advertising, and otherwise promoting its trademark. *Id.* at ¶¶ 12-13.

Furthermore, Plaintiff has extensively used, advertised, and promoted the Warhammer Marks in the United States, and has carefully monitored and policed the use of the Warhammer Marks. Matthews Decl. ¶¶ 9-14. As a result of Plaintiff's efforts, the Warhammer Marks have acquired fame in the consumer market. *Id.* The Warhammer Marks are a widely recognized trademark in the United States, and the trademark has achieved secondary meaning. *Id.* The Warhammer Marks have come to symbolize the enormous goodwill of Plaintiff's products throughout the United States. *Id.*

### B.     Defendants' Infringing Acts

As alleged by Plaintiff, admitted by default, and established by the evidence submitted herewith, the Defaulting Defendants operate and control e-commerce stores via third-party marketplace websites under their seller identification names and/or commercial Internet websites operating under their domain names as identified on Schedule "A" hereto (the "Seller IDs"). As such, the Defaulting Defendants are the active, conscious, and dominant forces behind the promotion, advertisement, distribution, offering for sale, and sale of goods bearing counterfeit and infringing trademarks which are exact copies of one or more of the Warhammer Marks (the "Counterfeit Goods"). *See* Matthews Decl. at ¶¶ 15-18; Declaration of Javier Sobrado in Support of Plaintiff's Renewed *Ex Parte* Motion for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets ("Sobrado Decl. ISO Mot. for TRO") [ECF No. 6-4] at ¶ 4-5; *see also* relevant web page captures from the Defaulting Defendants' Internet based e-commerce stores and commercial websites operating under the Seller IDs displaying the infringing items offered for sale ("Defendants' Seller IDs"). *See* Sobrado Decl. ISO Mot. for TRO at Exhibit 1 [ECF No. 6-5 – 6-13].

Further, as admitted by the Defaulting Defendants through default, at all times relevant, the Defaulting Defendants have had full knowledge of Plaintiff's ownership of the Warhammer Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.  (Complaint ¶ 35.)  The Defaulting Defendants do not have, nor have they ever had, the right or authority to use the Warhammer Marks for any purpose.  (*See* Matthews Decl. at ¶ 15).  However, despite their known lack of authority to do so, the Defaulting Defendants have engaged in the activity of promoting, and otherwise advertising, selling, offering for sale, and distributing their counterfeit branded goods via the Seller IDs.  (*See* Complaint ¶¶ 30-43; *see also* Matthews Decl. at ¶¶ 15-18; Sobrado Decl. ISO Mot. for TRO at ¶ 4-5.)

Plaintiff's evidence, obtained as a result of its investigation of the Defaulting Defendants, clearly demonstrates the Defaulting Defendants are engaged in the fraudulent promotion, advertisement, distribution, offering for sale, and sale of goods bearing counterfeits of the Warhammer Marks.  Plaintiff's counsel retained a private investigative firm, to investigate the promotion and sale of counterfeit and infringing versions of Warhammer-Marks-branded products by the Defaulting Defendants and to determine the Defaulting Defendants' payment account data for receipt of funds paid for the sale of counterfeit versions of Plaintiff's branded products through the Seller IDs.  (*See* Matthews Decl. at  ¶ 16; Sobrado Decl. ISO Mot. for TRO at ¶ 5.)  Plaintiff's investigator accessed the Defaulting Defendants' Internet based e-commerce stores operating under each of the Seller IDs, and placed orders for the purchase of various products offered for sale bearing, or suspected to be bearing, at least one of the Warhammer Marks at issue in this action from each Defaulting Defendant and requested each product to be shipped to an addresses in the Southern District of Florida. *See* Matthews Decl. at ¶ 16; Sobrado Decl. ISO Mot. for TRO at ¶ 5, and Exhibit 1.  At the conclusion of the process, the detailed web page captures and images

of the Warhammer-Marks-branded items wherein orders were initiated via Defendants' Seller IDs, were sent to Plaintiff's representative for review. *Id.*

Plaintiff's representative and his team, who are able to identify distinctions between genuine Warhmmer-Marks-branded merchandise and counterfeit copies of the same, reviewed and visually inspected the Warhammer-Marks-branded items ordered from each of the Seller IDs by reviewing the e-commerce stores and websites operating under each of the Seller IDs, or the detailed web page captures and images of the items bearing the Warhammer Marks, and determined the products were not genuine versions of Plaintiff's products. Matthews Decl. at ¶ 18.

### C.     Procedural Background

On April 16, 2025, Plaintiff filed its Complaint [ECF No. 1].  On April 22, 2025, the Court entered a Sealed Order Granting Plaintiff's *Ex Parte* Motion for Entry of Temporary Restraining Order [ECF No. 10], and subsequently converted the temporary restraining order into a preliminary injunction on May 27, 2025 [ECF No. 41].  The temporary restraining order and preliminary injunction required, inter alia, any third party financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms who is providing services for any of the Defendants, (*i.e.,* eBay), and their related companies and affiliates (collectively, the "Third Party Providers"), to identify and restrain all funds in Defendants' associated payment accounts, including all other financial accounts tied to, used by, or that transmit funds into, the respective Defendants' financial accounts, and divert those funds to a holding account for the trust of the Court. *See* Declaration of Javier Sobrado in support of Motion for Entry of Final Default Judgment ("Sobrado Decl. ISO FDJ") at ¶ 3.  Subsequently, Plaintiff's counsel received notice from the applicable financial institutions that they complied with the requirements of the Court's Order. *Id.*

On April 18, 2025, Plaintiff filed its *Ex Parte* Motion for Order Authorizing Alternative

Service of Process on Defendants [ECF No. 7], which the Court granted on April 22, 2025 [ECF No. 11], authorizing Plaintiff to serve the summons, Complaint, and all subsequent filings in this matter upon Defendants via e-mail and posting copies of the same on Plaintiff's designated service notice website.  Pursuant to the Court's Order authorizing alternate service of process, Plaintiff served Defendants between May 6-20, 2025, via e-mail and publication by posting a true and correct copy of the Complaint, and summons, and other documents filedd in this matter on the website:      https://www.dropbox.com/scl/fo/v5txihe76n9bjgi5wym9f/APDmDNkRxyGHu9a6-hHsn_s?rlkey=mp72jjcotrvkssqcw8hlv3nw7&st=ixo7sscm&dl=0. *See* Sobrado Decl. ISO FDJ ¶ 4; Proof of Service [ECF No. 34].  The time allowed for the Defaulting Defendants to respond to the Complaint has expired. Sobrado Decl. ISO FDJ ¶ 5.  The Defaulting Defendants have not been granted any extension of time to respond, nor have they served or filed an Answer or other response. *Id.* at ¶ 6.  To Plaintiff's knowledge, none of the the Defaulting Defendants are infants or incompetent persons, and, upon July 7, 2025, Plaintiff moved for entry of Clerk's Default [ECF No. 61], which the Clerk of the Court entered on July 8, 2025 [ECF No. 62].  Plaintiff now moves the Court to grant Final Default Judgment against the Defaulting Defendants and submits this Motion in compliance with the Court's Order on Requiring Motion for Default Final Judgment. [ECF No. 50].

## III.    JURISDICTION & VENUE

The Court has original subject matter jurisdiction exists for Counts I and II of the complaint, which allege trademark counterfeiting and infringement, false designation of origin under the Lanham Act, pursuant to 15 U.S.C. §§ 1114, 1116, 1121, 1125(a), 1125(d), 28 U.S.C. §§ 1331 and 1338.  Court has supplemental subject matter jurisdiction The Court has supplemental subject matter jurisdiction over Counts III and IV (common law unfair competition and trademark

infringement).

Plaintiff has demonstrated a *prima facie* showing that this Court has specific personal jurisdiction over the Defendants. Defendants, alleged to be residing or operating in China, are alleged to have committed a tortious act within the state of Florida in satisfaction of Fla. Stat. §48.193(1)(b). *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). Additionally, jurisdiction is properly pled pursuant to Fed. R. Civ. P. 4(k)(2), the federal long arm statute, because Plaintiff's claims arise under the Federal Trademark (Lanham) Act and Defendants have not consented to jurisdiction in another state or identified a jurisdiction where suit is possible. *Barrocoss v. Elmassian*, 2012 WL 1622988, *6 (S.D.Fla. May 9, 2012), Complait, at ¶ 7..

Plaintiff has demonstrated a *prima facie* showing that venue is proper in this District because, for venue purposes, "a defendant not resident in the United States may be sued in any judicial district." 28 U.S.C. § 1391(c)(3).

## IV.   ARGUMENT

### A.   Default Judgment Should be Entered Against the Defaulting Defendants.

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.  Personal jurisdiction over the Defaulting Defendants and venue in this district are proper under 28 U.S.C. § 1391 as the Defaulting Defendants direct business activities toward consumers throughout the United States, including within the State of Florida and this district and cause harm to Plaintiff's business within this jurisdiction through the Internet based e-commerce stores and websites operating under the Seller IDs.  (*See* Complaint ¶¶ 4-8.)

#### 1.   Default Judgment is Proper.

A court may order a default judgment pursuant to Fed. R. Civ. P. 55(b)(2).  *See* Fed. R. Civ. P. 55.  In defaulting, the well-pled factual allegations of a plaintiff's complaint, other than

those related to damages, will be taken as true. *PetMed Express, Inc. v. Medpets.com*, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004) (*citing Buchanan v. Bowman*, 820 F.2d 359 (11th Cir. 1987)). In this case, the Complaint and declaration filed in support of Plaintiff's Motion for Entry of Final Default Judgment clearly demonstrate that default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against the Defaulting Defendants.

## 2.    Factual Allegations Establish the Defaulting Defendants' Liability.

Title 15 U.S.C. § 1125 provides liability for false designation of origin where a plaintiff pleads "an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark Int 'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1395, 188 L. Ed. 2d 392 (2014). To prevail on a claim of false designation of origin under Section 43(a) of the Lanham Act, Plaintiff must prove that Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, which is likely to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval, of Defendants' goods by Plaintiff. 15 U.S.C. § 1125(a)(1). *See also Suntree Techs., Inc. v. Ecosense Intern., Inc.*, 693 F.3d 1338, 1348 (11th Cir. 2012) (A false designation claim requires the plaintiff to show that (1) "it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that customers were likely to confuse the two."). The test for liability for false designation of origin under Section 43(a) is "whether the public is likely to be deceived or confused by the similarity of the marks at issue." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780, 112 S.Ct. 2753, 2763 (1992).

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion

between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. *See Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 n.4 (11th Cir. 2001) ("Courts may use an analysis of federal infringement claims as a 'measuring stick' in evaluating the merits of state law claims."). Further, the test to determine trademark infringement liability under Florida common law is the same as the likelihood of consumer confusion test outlined under the Lanham Act. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1217-18.

The well-pled factual allegations of Plaintiff's Complaint, properly allege the elements for each of the above claims. Moreover, the factual allegations in Plaintiff's Complaint, substantiated by the evidence submitted herewith, conclusively establish the Defaulting Defendants' liability under each of the claims asserted in the Complaint. Thus, Default Judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against the Defaulting Defendants.

**B.      Plaintiff's Requested Relief Should be Granted.**

**1.      Entry of a Permanent Injunction is Appropriate.**

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. 15 U.S.C. § 1116(a). Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (*citing Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)). Moreover, even in a default judgment setting, injunctive relief is available. *See e.g., PetMed Express, Inc.*, 336 F. Supp. 2d at 1222-23. The Defaulting Defendants' failure to respond or otherwise appear in this action makes it difficult for Plaintiff to prevent further

infringement absent an injunction.  *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease.  Therefore, plaintiff is entitled to permanent injunctive relief.").  Pursuant to 15 U.S.C. § 1116, this Court should permanently enjoin the Defaulting Defendants from continuing to infringe any of Plaintiff's intellectual property rights, including the Warhammer Marks.

Permanent injunctive relief is appropriate where a plaintiff demonstrates 1) it has suffered irreparable injury; 2) there is no adequate remedy at law; 3) the balance of hardship favors an equitable remedy; and 4) an issuance of an injunction is in the public's interest.  *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392-93, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006).  As demonstrated herein, and based upon the issuance of the temporary restraining order and preliminary injunction entered in this matter, Plaintiff has carried its burden on the four factors, warranting permanent injunctive relief, because the Defaulting Defendants have unlawfully used Plaintiff's goodwill to make a profit. Accordingly, permanent injunctive relief is appropriate.

The Defaulting Defendants' actions merit permanent injunctive relief, not only to protect Plaintiff's reputation, but also to protect consumers from being deceived as to the quality and source of products bearing Plaintiff's trademarks.  The facts alleged in Plaintiff's Complaint, substantiated by the evidence submitted herewith, show the Defaulting Defendants are "continuously infringing and inducing others to infringe" the Warhammer Marks by using them to advertise, promote, and sell goods bearing marks which are identical or altered to be identical to the Warhammer-Marks-branded goods. (*See* Complaint at ¶ 46).

Plaintiff is clearly suffering, and will continue to suffer, irreparable injury if the Defaulting Defendants' infringing activities are not permanently enjoined.  (*See* Matthews Decl. at ¶ 17.)  "[A]

sufficiently strong showing of likelihood of confusion . . . may by itself constitute a showing of a substantial threat of irreparable harm." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir.1998); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir.1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales.").  In any event, Plaintiff's Complaint alleges that the Defaulting Defendants' unlawful actions have caused Plaintiff irreparable injury, and will continue to do so if the Defaulting Defendants are not permanently enjoined. (Complaint ¶¶ 50, 58.)  The Defaulting Defendants have defaulted upon Plaintiff's factual allegations, and thereby admitted same.

Additionally, Plaintiff has no adequate remedy at law so long as the Defaulting Defendants continue to use Plaintiff's trademarks in connection with the operation of their Internet based e-commerce stores under the Seller IDs because Plaintiff will have no control of the quality of what appears to be its products in the marketplace.  An award of money damages alone will not cure the injury to Plaintiff's reputation and goodwill which will result if the Defaulting Defendants' infringing and counterfeiting actions are allowed to continue.  Moreover, it can hardly be said that the Defaulting Defendants face hardship in refraining from their willful infringement of Plaintiff's trademarks, whereas Plaintiff faces hardship from loss of sales and its inability to control its reputation.  In reality, the Defaulting Defendants have no cognizable hardship, as they will be prohibited from selling counterfeit goods, which is an illegal act to begin with.  Finally, the public has an interest in the issuance of a permanent injunction against the Defaulting Defendants in order to prevent consumers from being misled by the Defaulting Defendants' products. *See Chanel, Inc. v. besumart.com*, 240 F. Supp. 3d 1283, 1291 (S.D. Fla. 2016) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior."

(alteration added) (citation omitted)); *BellSouth Adver. & and Publ'g. Corp. v. Real Color Pages, Inc.*, 792 F. Supp. 775, 785 (M.D. Fla. 1991) (holding "[i]n a trademark infringement or unfair competition case, a third party, the consuming public is present and its interests are paramount."). Ultimately, the permanent injunction will prevent consumer confusion and deception in the marketplace, and will protect Plaintiff's property interest in its trademarks.

Furthermore, as admitted by the Defaulting Defendants through default, (i) the Seller IDs and associated payment accounts are essential components of the Defaulting Defendants' online activites, and (ii) the Seller IDs themselves are one of the means by which the Defaulting Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiff. (*See* Complaint at ¶ 22.) Therefore, in order to effectuate the injunction as a practical matter, all listings and associated images of goods bearing counterfeits and/or infringements of the Warhammer Marks via the Seller IDs should be permanently removed by the applicable governing Internet marketplace platform operators and/or administrators. Absent the removal of all listings and associated images of goods bearing and/or using counterfeits and/or infringements of the Warhammer Marks, the Defaulting Defendants will remain free to continue infringing Plaintiff's trademarks with impunity, will continue to benefit from the Internet traffic to those e-commerce stores and websites built through the unlawful use of the Warhammer Marks, and will continue to defraud the public by their illegal activities. The Court's powers of equity are sufficiently broad to compel measures necessary to enforce an injunction against infringement. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15, 91 S. Ct. 1267, 1276 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for. . . the essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case."); *United States v.*

*Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole.").

The Defaulting Defendants have created an Internet-based counterfeiting and infringement scheme and are profiting from the deliberate misappropriation of Plaintiff's rights. Accordingly, the Court should eliminate the means by which the Defaulting Defendants conduct their unlawful activities to further prevent the use of these instrumentalities of infringement.[1]

## V.     DAMAGES

Plaintiff is not seeking, and has not alleged, joint and several liability against any Defendants. All remaining Defendants in this case are Defaulting Defendants, so there is no possibility for an inconsistent liability between Defendants.

### A.     Damages as to Count I for Trademark Counterfeiting and Infringement.

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of goods, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than

---

[1] *See e.g., Michael Kors, L.L.C. v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 19-cv-63119-RKA (S.D. Fla. Apr. 27, 2020) (Order requiring, *inter alia*, the Internet marketplace website operators and/or administrators for the Seller IDs, to permanently remove all listings and associated images of products bearing counterfeits and/or using infringements of plaintiff's trademarks under the seller identification names used/controlled by defendants); *Adidas AG v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 19-cv-63109-RKA (S.D. Fla. Mar. 31, 2020) (same); *Chanel, Inc. v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 19-CV-62102-RKA (S.D. Fla. Nov. 5, 2019, docketed Nov. 6, 2019) (same), *Gucci America, Inc., v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 19-cv-61447-RKA (S.D. Fla. Oct. 15, 2019, docketed Oct. 16, 2019) (same); *Tiffany (NJ) LLC, v. account n*, Case No. 19-cv-61294-RKA (S.D. Fla. Aug. 16, 2019, docketed Aug. 19, 2019) (same). *See also Malletier v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, No. 19-cv-61021-MGC, 2019 U.S. Dist. LEXIS 225874 (S.D. Fla. Dec. 12, 2019) (same); *Chanel, Inc. v. Fendona*, No. 19-cv-60734-BB, 2019 U.S. Dist. LEXIS 225780 (S.D. Fla. May 23, 2019) (same); *Fendi S.R.L. v. Joe Bag*, No. 19-cv-61356-RAR, 2019 U.S. Dist. LEXIS 169132 (S.D. Fla. Aug. 28, 2019) (same); *Adidas AG v. gshwjs*, Case No. 19- cv-61811-RS (S.D. Fla. Nov. 25, 2019).

$1,000.00 nor more than $200,000.00 per counterfeit mark per type of good. 15 U.S.C. §
1117(c)(1). In addition, if the Court finds that the Defaulting Defendants' counterfeiting actions
were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per
type of good. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), Plaintiff elects to recover
an award of statutory damages as to Count I of the Complaint, as to all the Defaulting Defendants
havingless that $20,000 in sales, and treble profits for the Defaulting Defendants having more than
$20,000 in infringing sales, and $60,000 in statutory damages for all other Defaulting Defendants.

With respect to profits, Plaintiff may recover the full amount of revenue for infringing sales
by the Defaulting Defendants.

> Numerous courts have held that "when a trademark plaintiff offers evidence of
> infringing sales and the infringer fails to carry its statutory burden to offer evidence
> of deductions, the plaintiff's entitlement to profits under the Lanham Act is equal
> to the infringer's gross sales." WMS Gaming, Inc. v. WPC Prods. Ltd., 542 F.3d
> 601, 609 (7th Cir.2008); see Hospitality Int'l v. Mahtani, No. 2:97CV87, 1998 WL
> 35296447 at *9 (M.D.N.C. Aug. 3, 1998) ("[i]f the defendant provides no evidence
> from which the Court can determine the amount of any cost deductions, the
> defendant's profits are usually held to be equal to the defendant's sales"); Joy Mfg.
> Co. v. CGM Valve & Gauge Co., 730 F.Supp. 1387, 1395 (S.D.Tex.1989)
> ("[Defendant] failed to prove or offer to prove any elements of cost or deduction
> claimed; therefore, plaintiff is entitled to an award of the full amount of
> [defendant's] sales, ..."); Brand v. NCC Corp., 540 F.Supp. 562, 565 (E.D.Pa.1982)
> (where defendant made no attempt to prove any cost deductions, "profits" were
> based upon gross sales revenues); Pillsbury Co. v. Southard, 682 F.Supp. 497, 500
> (E.D.Okla.1986) (where the infringer does not carry its burden to prove deductible
> costs, the corporation whose rights have been violated may be awarded all revenue
> for that year); New York Racing Association, Inc. v. Stroup News Agency Corp.,
> 920 F.Supp. 295, 301 (N.D.N.Y.1006) ("when a trademark plaintiff offers evidence
> of infringing sales and the infringer fails to carry its statutory burden to offer
> evidence as to the costs of goods sold, then the profits to which the plaintiff is
> entitled under the Lanham Act are equal to the infringer's gross sales")., 
> "[n]umerous courts have held that 'when a trademark plaintiff offers evidence of
> infringing sales and the infringer fails to carry its statutory burden to offer evidence
> of deductions, the plaintiff's entitlement to profits under the Lanham Act is equal
> to the infringer's gross sales.").

*Tiramisu Intern. LLC v. Clever Imports LLC*, 741 F.Supp.2d 1279, 1291 (S.D.Fla. 2010).

The Court has wide discretion to set an amount of statutory damages. *PetMed Express,*

*Inc.*, 336 F. Supp. 2d at 1219 (*citing Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990)).  Indeed, an award of statutory damages is an appropriate remedy, despite a plaintiff's inability to provide actual damages caused by a defendant's infringement. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent.").  Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain.  *See, e.g.*, S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages); *see also PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in default judgment cases due to infringer nondisclosure"). This case is no exception.

A defendant's intent can be of probative value for establishing willfulness, triggering an enhanced statutory award.  *PetMed Express, Inc.*, 336 F. Supp. 2d at 1220.  A defendant is deemed to have acted willfully where "the infringer acted with actual knowledge or reckless disregard" to a plaintiff's intellectual property rights.  *See Arista Records, Inc. v. Beker Enter., Inc.*, 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003).  Willfulness may also be inferred from the defendant's default. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1217 (upon default, well plead allegations taken as true).  Accordingly, the Defaulting Defendants are deemed to have willfully infringed.

The Warhammer Marks are renowned worldwide as an identifier of high quality merchandise, and the fact that the Defaulting Defendants offered for sale and sold goods using marks which are identical or altered to be identical to such strong marks shows their desire and purpose to trade upon Plaintiff's goodwill.  Indeed, in a case of clear-cut copying such as this, it is appropriate to infer that the Defaulting Defendants intended to cause confusion and benefit from

Plaintiff's reputation, to Plaintiff's detriment.  *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (court infers intent to confuse consumers into believing affiliation from the Defaulting Defendants' use of such a mark that was confusingly similar).  Moreover, in this district, it has been held that when an alleged infringer adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'"  *Turner Greenberg Assocs.*, 320 F. Supp. 2d 1317, 1333 (S.D. Fla. 2004) (*citing Carnival Corp. v. Seaescape Casino Cruises, Inc.*, 74 F. Supp. 2d 1261, 1268 (S.D. Fla. 1999)).

Here, the evidence clearly establishes that each of the Defaulting Defendant intentionally copied one or more of the Warhammer Marks for the purpose of deriving the benefit of Plaintiff's world-famous reputation.   In addition, the Defaulting Defendants defaulted on Plaintiff's allegations of willfulness.  (*See* Complaint at ¶ 37.)  *See Arista Records, Inc.*, 298 F. Supp. 2d at 1313 (finding a Court may infer willfulness from the defendants' default).  As such, this Court should award a significant amount of statutory damages under the Lanham Act to ensure the Defaulting Defendants do not continue their intentional and willful counterfeiting activities.

The evidence in this case demonstrates that each of the Defaulting Defendant promoted, distributed, advertised, offered for sale, and/or sold at least one type of good bearing marks which were in fact counterfeits of at least, one of the Warhammer Marks.  (*See* Complaint at ¶¶ 30-43; Matthews Decl. at ¶¶ 10-13 & Exhibit 1)  In cases involving the same merits, issues, and requests for damages, this Court has found similar evidence of record sufficient to establish a defendant's willful infringement and enter a final default judgment and permanent injunction accordingly.  *See, e.g.*, *Fendi S.R.L.. v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 20-CV-61724-RNS (S.D. Fla. Dec. 22, 2020, docketed Dec. 23, 2020).  Based on the above, Plaintiff respectfully suggests the Court award statutory damages in the amount of

$60,000.00 against each of the Defaulting Defendants.

Plaintiff's suggested damage amount is well within the permissible range prescribed under 15 U.S.C. § 1117(c)(2) and should be sufficient to deter the Defaulting Defendants and others from continuing to counterfeit or otherwise infringe Plaintiff's trademarks, compensate Plaintiff, and punish the Defaulting Defendants, all stated goals of 15 U.S.C. § 1117(c).  Joint Statement of Trademark Counterfeiting Legislation, H.R.J. Res. 648, 98th Cong., 2nd Sess., 130 Cong.Rec. H12076, H12083; *PetMed Express, Inc.*, 336 F. Supp. 2d at 1222 ("statutory damages under § 1117(c) are intended not just for compensation for losses, but also to punish and deter wrongful conduct.").  This Court and others have granted statutory damages under the Lanham Act similar to Plaintiff's request herein.[2]

### B.      Damages as to Count II for False Designation of Origin.

The damages available under Section 35 of the Lanham Act are set forth in the Section of that Act entitled "Recovery for violation of rights," and provides,

(a) Profits; damages and costs; attorney fees

---

[2] *See, e.g., Michael Kors, L.L.C. v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 19-cv-63119-RKA (S.D. Fla. Apr. 27, 2020) (awarding Plaintiff $1,000,000.00 against each Defendant); *Adidas AG v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 19-cv-63109-RKA (S.D. Fla. Mar. 31, 2020) (same); *Chanel, Inc. v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 19-CV-62102-RKA (S.D. Fla. Nov. 5, 2019, docketed Nov. 6, 2019) (same); *Gucci America, Inc., v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 19-cv-61447-RKA (S.D. Fla. Oct. 15, 2019, docketed Oct. 16, 2019) (same); *Tiffany (NJ) LLC, v. account n*, Case No. 19-cv-61294-RKA (S.D. Fla. Aug. 16, 2019, docketed Aug. 19, 2019) (same). *See also Chanel, Inc. v. Replicachanelbag*, 362 F. Supp. 3d 1256 (S.D. Fla. 2019) (Bloom, B.) (same); *Malletier v. Individuals, P'ship*, No. 19-cv-61021-MGC, 2019 U.S. Dist. LEXIS 225874 (S.D. Fla. Dec. 12, 2019) (same); *Fendi S.R.L. v. Joe Bag*, No. 19-cv- 61356-RAR, 2019 U.S. Dist. LEXIS 169132 (S.D. Fla. Aug. 28, 2019) (same); *Chanel, Inc. v. Fendona*, No. 19-cv-60734-BB, 2019 U.S. Dist. LEXIS 225780 (S.D. Fla. May 23, 2019) (same); *Adidas AG v. gshwjs, et al.*, Case No. 19-cv-61811-RS (S.D. Fla. Nov. 25, 2019) (same); *Apple Corps Limited v. Alvis Bronte*, Case No. 19-cv-60928-UU (S.D. Fla. June 24, 2019) (same); *YETI Coolers, LLC v. allramblerdeal.com*, Case No. 18-cv-62811-WPD (S.D. Fla. May 31, 2019); *Louis Vuitton Malletier, S.A. v. Beltteen*, Case No. 18-cv-62871-JIC (S.D. Fla. Mar. 22, 2019).

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) or (d) of this title, or a willful violation under section 1125(c) of this title, shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117(a).

Thus, the Lanham Act provides that a plaintiff who prevails in a trademark infringement action "shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action."  15 U.S.C. § 1117(a).

"The Eleventh Circuit has made clear that in assessing damages under the Act the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount." *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, Case No. 16-cv-21203, 2018 WL 10322164, *3 (S.D. Fla. Jan. 13, 2018). "Further, if the court finds that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for the sum the court finds to be just, according to the circumstances of the case." *Id.* (citing *Slep-Tone Entertainment Corp., v. Johnson*, 518 F. App'x 815, 819 (11th Cir. 2013); 15 U.S.C. 1117(a)). "Thus, a district court has considerable discretion to award damages that are appropriate to the unique facts of the case and

18

when the court concludes that an award of profits is 'excessive,' the Act expressly provides that it may award an amount of damages as it shall find to be just." *Id.* "Finally, in *Burger King v. Mason*, 855 F. 2d 779 (11th Cir. 1988), the Eleventh Circuit stated, '... all monetary awards under Section 1117 are 'subject to the principles of equity,' [and] ... no hard and fast rules dictate the form or quantum of relief.'" *Id.* (citation omitted).

Further, "the Eleventh Circuit has defined an exceptional case as a case that can be characterized as malicious, fraudulent, deliberate and willful … or a case where there is 'evidence of fraud or bad faith.'" *Rain Bird Corp. v. Taylor*, 665 F. Supp. 2d 1258, 1271 (N.D. Fla. 2009) (citing *Dieter v. B & H Indus. of S.W. Fla., Inc.*, 880 F.2d 322, 329 (11th Cir. 1989); *Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.*, 675 F.2d 1160, 1169 (11th Cir. 1982); *Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc.*, 253 F.3d 1332 (11th Cir. 2001)). In the matter at hand, the Warhammer Marks are renowned worldwide as identifiers of high quality merchandise, and the fact that the Defaulting Defendants offered for sale and sold goods using marks which are identical or altered to be identical to such strong marks shows their desire and purpose to trade upon Plaintiff's goodwill. Indeed, in a case of clear-cut copying such as this, it is appropriate to infer that the Defaulting Defendants intended to cause confusion and benefit from Plaintiff's reputation, to Plaintiff's detriment. *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (court infers intent to confuse consumers into believing affiliation from the Defaulting Defendants' use of such a mark that was confusingly similar). Moreover, in this district, it has been held that when an alleged infringer adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'" *Turner Greenberg Assocs.*, 320 F. Supp. 2d 1317, 1333 (S.D. Fla. 2004) (*citing Carnival Corp. v. Seaescape Casino Cruises, Inc.*, 74 F. Supp. 2d 1261, 1268 (S.D. Fla. 1999)).

Here, the evidence clearly establishes that each Defaulting Defendant intentionally copied one or more of the Warhammer Marks for the purpose of deriving the benefit of Plaintiff's world-famous reputation.  In addition, the Defaulting Defendants defaulted on Plaintiff's allegations of fraudulent and intentional conduct.  (*See* Complaint at ¶¶ 18 & 37.)  *See Arista Records, Inc.*, 298 F. Supp. 2d at 1313 (finding a Court may infer willfulness from the defendants' default).  As such, this Court should award a significant amount of exceptional case damages under the Lanham Act to ensure the Defaulting Defendants do not continue their intentional and fraudulent activities.

The evidence in this case demonstrates that each of the Defaulting Defendant promoted, distributed, advertised, offered for sale, and/or sold at least one type of good bearing marks which were in fact blatant knock offs of at least, one of the Warhammer Marks.  (*See* Complaint at ¶¶ 30-43; Matthews Decl. at ¶¶ 10-13 & Exhibit 1.)  In cases involving the same merits, issues, and requests for damages, this Court has found similar evidence of record sufficient to establish a defendant's infringement and enter a final default judgment and permanent injunction accordingly. *See, e.g.*, *Fendi S.R.L.. v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 20-CV-61724-RNS (S.D. Fla. Dec. 22, 2020, docketed Dec. 23, 2020).  Based on the above considerations, Plaintiff respectfully suggests the Court award damages in the amount of the greater of treble profits or $60,000.00 against each Defaulting Defendant.

Plaintiff's suggested damage amount is well within the permissible range prescribed under 15 U.S.C. § 1117(a) and should be sufficient to deter the Defaulting Defendants and others from continuing to counterfeit or otherwise infringe Plaintiff's trademarks, compensate Plaintiff, and punish the Defaulting Defendants, all stated goals of 15 U.S.C. § 1117(a).  This Court and others have granted damages under Section 35 of the Lanham Act similar to Plaintiff's request herein.[3]

---

[3] *See, e.g., Michael Kors, L.L.C. v. Individuals, P'ships, and Unincorporated Ass'ns*

**C.    Damages as to Count III for Common Law Unfair Competition, and Count IV for Common Law Trademark Infringement.**

Plaintiff's Complaint also sets forth a cause of action for common law of unfair competition (Count III), and common law trademark infringement (Count IV).  As to Counts III and IV, the allowed scope of monetary damages is also encompassed in 15 U.S.C. § 1117(a).  Accordingly, judgment on Counts III and IV should be limited to the amount awarded pursuant to Counts I and II and entry of the requested equitable relief.

**VI.    CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court enter final default judgment and a permanent injunction against the Defaulting Defendants in the form of the proposed Final Default Judgment and Permanent Injunction filed herewith.

Date:   February 7, 2025                    Respectfully submitted by,

                                            **Javier Sobrado**
                                            Javier Sobrado(Fla. Bar No. 44992)
                                            Attorney Email address: jsobrado@brickellip.com

---

*Identified on Schedule "A"*, Case No. 19-cv-63119-RKA (S.D. Fla. Apr. 27, 2020) (awarding Plaintiff $1,000,000.00 against each Defendant); *Adidas AG v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 19-cv-63109-RKA (S.D. Fla. Mar. 31, 2020) (same); *Chanel, Inc. v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 19-CV-62102-RKA (S.D. Fla. Nov. 5, 2019, docketed Nov. 6, 2019) (same); *Gucci America, Inc., v. Individuals, P'ships, and Unincorporated Ass'ns Identified on Schedule "A"*, Case No. 19-cv-61447-RKA (S.D. Fla. Oct. 15, 2019, docketed Oct. 16, 2019) (same); *Tiffany (NJ) LLC, v. account n*, Case No. 19-cv-61294-RKA (S.D. Fla. Aug. 16, 2019, docketed Aug. 19, 2019) (same). *See also Chanel, Inc. v. Replicachanelbag*, 362 F. Supp. 3d 1256 (S.D. Fla. 2019) (Bloom, B.) (same); *Malletier v. Individuals, P'ship*, No. 19-cv-61021-MGC, 2019 U.S. Dist. LEXIS 225874 (S.D. Fla. Dec. 12, 2019) (same); *Fendi S.R.L. v. Joe Bag*, No. 19-cv- 61356-RAR, 2019 U.S. Dist. LEXIS 169132 (S.D. Fla. Aug. 28, 2019) (same); *Chanel, Inc. v. Fendona*, No. 19-cv-60734-BB, 2019 U.S. Dist. LEXIS 225780 (S.D. Fla. May 23, 2019) (same); *Adidas AG v. gshwjs, et al.*, Case No. 19-cv-61811-RS (S.D. Fla. Nov. 25, 2019) (same); *Apple Corps Limited v. Alvis Bronte*, Case No. 19-cv-60928-UU (S.D. Fla. June 24, 2019) (same); *YETI Coolers, LLC v. allramblerdeal.com*, Case No. 18-cv-62811-WPD (S.D. Fla. May 31, 2019) (same); *Louis Vuitton Malletier, S.A. v. Beltteen*, Case No. 18-cv-62871-JIC (S.D. Fla. Mar. 22, 2019) (same).

THE BRICKELL IP GROUP, PLLC
1101 Brickell Avenue, South Tower, Suite 800
Miami FL, 33131
Telephone: (305) 728-8831
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that today, July 22, 2025, in accordance with this Court's July 8, 2025 Order Order on Final Default Judgment Procedure [ECF No. 63], the Defaulting Defendants, and their respective counsel who have not appeared (where applicable), in this case are being served with a copy of the foregoing document by email as set forth below in the Service List, and via posting to the service website, https://www.dropbox.com/scl/fo/v5txihe76n9bjgi5wym9f/APDmDNkRxyGHu9a6-hHsn_s?rlkey=mp72jjcotrvkssqcw8hlv3nw7&st=ixo7sscm&dl=0, in the manner prescribed by this Court's April 22, 2025, Order Authorizing Alternative Service of Process on Defendants [ECF No. 11].

/s Javier Sobrado /

Javier Sobrado

## SERVICE LIST

| D.No. | Seller Name | Email |
|---|---|---|
| 1 | Caoxian Shinehome Artware Co., Ltd. | hank.liu@shinehome.net; |
| 2 | DB Imps&exps Co.(Guangzhou) Ltd. | gzdbcase@foxmail.com; |
| 4 | Dongguan Utrust Craft Products Co., Ltd. | export@barmat.com; |
| 5 | Ezhou Tongguodou Trading Co., Ltd. | ea@enmeitrading.com; |
| 6 | Foshan Haofan Trading Co., Ltd. | eva@niandiceworks.com; |
| 10 | Hangzhou Jukui Technology Co., Ltd. | aimee@matmill.com;elaine@matmill.com; |
| 11 | Hangzhou Yufan Technology Co., Ltd. | admin@yourfunyoga.com;info@yourfunyoga.com; |
| 12 | Huizhou Findle Computer Embroidery Co., Ltd. | jackhuang@findle-cn.com; |
| 13 | Huizhou Yingyihui Import And Export Trading Co., Ltd. | hzyingyihui@163.com; |
| 14 | Iqfun(guangzhou)trading Co.,ltd | yzd_iqfun@163.com; |
| 15 | Ningbo Jinghai Machinery Co., Ltd. | nbjinghai@163.com; |
| 16 | Ningbo Sunrise Trading Co., Ltd. | 1456987421@qq.com; |
| 18 | Shenzhen Aiyouyue Industrial Co., Ltd. | angelli@ayoyoe.com; |

| | | |
|---|---|---|
| 19 | Shenzhen Bangjiashun Industrial Co., Ltd. | 386747967@qq.com;DUWENJIE8858@163.COM; |
| 20 | Shenzhen CLC Game And Gift Limited | info@clcgift.com; |
| 26 | Shenzhen Li Chen Trading Co., Ltd. | adam@hddice.com; |
| 27 | Shenzhen Lifun Bags And Gifts Co., Ltd. | sales@lifungifts.com; |
| 29 | Shenzhen Mingxin Craft Jewelry Co., Ltd. | c13265700636@163.com; |
| 31 | Shenzhen Sndn Outdoor Products Co., Ltd. | tdyj119@163.com; |
| 32 | Shenzhen Tianyun Arts & Crafts Co., Ltd. | alishxuan@cardloong.com;galaxyxuan@t-tianyun.com; |
| 34 | Shenzhen Xinnawei Technology Co., Ltd. | xnwparty@outlook.com; |
| 36 | Shenzhen Xinrui Gifts And Crafts Co., Ltd. | 1411345985@qq.com;z1546454905@163.com; |
| 37 | Wuxi Stoter Import And Export Company Ltd. | sales08@stoter.com.cn; |
| 38 | Yiwu Haofeng Stationery Co., Ltd. | haofengart@hotmail.com; |
| 39 | Yiwu Shengzhou Stationery Co., Ltd. | danazhou@bomeijia-art.com.cn;manager@shengzhouart.com; |
| 40 | Yiwu Zhuanxin Import And Export Co., Ltd. | 18602519086@163.com; |
| 41 | Yiwu Zhuanxing Trading Co., Ltd. | xjcdn@163.com; |
| 42 | Yunhe County Jiemu Toys Co., Ltd. | 1466873374@qq.com;378494268@qq.com; |
| 43 | Zhangjiagang Topwin Rubber & Plastic Products Co., Ltd. | linjure.wu@outlook.com; |
| 219 | LLhandmadeclothing | 8fbz7d52rh@privaterelay.appleid.com; |
| 241 | RedGoblinShop | wargametopshop@gmail.com; |
| 196 | Deploymats | ecomoskie@gmail.com; |
| 267 | WargamingPrinting3D | wargamingprinting@gmail.com; |
| 227 | OccultaClothing | occultaclothinguk@gmail.com; |
| 193 | BoneshopDE | mz@boneshop.de; |
| 259 | ThatCoolMerch | thatcoolmerch@gmail.com; |
| 247 | ServoPrinter | contact.servoprinter@gmail.com; |

| 215 | KhadeemsDivinations | eafortune11@gmail.com; |
|---|---|---|
| 248 | Sisclosett | sislittleshop@hotmail.com; |
| 226 | NicheNerdGoods | bob_mirzai@outlook.com; |
| 213 | JLA3DPrinting | james.lee.allen@gmail.com; |
| 223 | MeepleCave | meeple.cave.3d@gmail.com; |
| 206 | GreenRoboRabbit | psyxosutek@gmail.com; |
| 200 | EpicForged | anton.ride314@btinternet.com; |
| 216 | LaForgiaDeiLeinad | laforgiadeileinad@gmail.com; |
| 199 | EnchantedApparelUK | enchantedappareluk@gmail.com; |
| 217 | LaserPatch | coolaserpatch@gmail.com; |
| 21 | Shenzhen Hairan Digital Co. Ltd | 3510763325@qq.com;sales02@hairandice.com; |
| 229 | PivertFrame | env.enestopc@gmail.com; |
| 33 | Shenzhen Xin Hemei Toys Firm | kary@hemeitoys.com; |
| 221 | LyrikCo | Sascha.Scherpf@t-online.de; |
| 9 | Guangzhou Zilong Tech Co., Ltd. | charlin@zitechcase.com; |
| 222 | MageFireMiniatures | brandon.steward@hotmail.com; |
| 204 | GamesGear | thegamesgeek1@gmail.com; thegamesgeek@virginmedia.com; |
| 265 | VenekGifts | eratul1903@gmail.com; |
| 181 | 3DominatorIT | gurrenledit@gmail.com; |
| 188 | ArtPaintingsGoods | Artpankno@gmail.com; |
| 220 | LMX3D | Roblmx86@gmail.com; |
| 240 | ReapersPotions | reaper.alvarado@hotmail.com; |
| 28 | Shenzhen Luomen Crafts Co., Ltd. | 18898377720@163.com; |
| 270 | WavecolorsTabletop | wavecolorspainting@gmail.com; |
| 238 | propsandpixel | jamesaplumb@gmail.com; |
| 225 | NewportMesaGraphic | klputman@gmail.com; |
| 185 | APstudio3D | janopa11@hotmail.com; |
| 191 | BBRubbers | bbmpetsy@gmail.com; |
| 23 | Shenzhen Jianai Craft Jewelry Co., Ltd. | 1067213713@qq.com; |
| 276 | zombihand | vaaybe1@gmail.com; |
| 251 | StarWhaleMiniatures | gioele.vaccaro@gmail.com; |
| 207 | HandmadeeBC | bcfigurine@hotmail.com; |
| 269 | WarpedRealms | ceo@giovannicriscione.it; |
| 183 | AdAstraCollection | colaoroberto@libero.it; |
| 197 | dontthinkjustcharge | batchelor183@gmail.com; |

| 275 | Zemtslab3D | zemtslab@gmail.com; |
|---|---|---|
| 35 | Shenzhen Xinrong Craft Jewelry Co., Ltd. | w17736639872@163.com; |
| 252 | Stasunoka | aleeex110100@gmail.com; |
| 7 | Guangzhou Longcheng Ceramics Co., Limited | 3348409598@qq.com; |
| 187 | ArtOWarStore | lawrencecandraw@gmail.com; |
| 230 | Pixmium | sercanokten84@gmail.com; |
| 195 | Calseboli | embingle@gmail.com; |
| 257 | Techworkshop | john@techworkshop.at; |
| 3 | Dongguan Gubeite Hardware Technology Co., Ltd. | hkdzgjz001@163.com; |
| 202 | FaelysiumWonders | a_buchwald@hotmail.com; |
| 30 | Shenzhen Sandes Acrylic Products Co., Ltd. | frank@thandes.com; |
| 25 | Shenzhen Jms Crafts Ltd | june@jmscrafts.com; Jeffrey Liu <jeffrey.liu@usatro.com>; |
| 106 | ua_clearwater | m16538561597@163.com; |
| 24 | Shenzhen Jinzhibao Trading Co., Ltd. | alanwang456528@gmail.com; |
| 8 | Guangzhou Tjkd Watch Co., Ltd. | woodenwatches@hotmail.com; |
| 17 | Shenzhen 374 Technology Co., Ltd. | 695198039@qq.com; |
| 100 | dang10 | dhdang@126.com; |
| 101 | essential_hoodie | 15060124403@163.com; |
| 102 | lianwu09 | 1933044584@qq.com; |
| 103 | middletown | m16762066653@163.com; |
| 104 | olylin1 | m19961900900@163.com; |
| 105 | ua_boulder | m16735342930@163.com; |
| 107 | ua_irvine | m16735342930@163.com; |
| 108 | ua_riverside | m16735342930@163.com; |
| 109 | ua_sacramento | m16735342930@163.com; |
| 110 | ua_sebastian | m16538561597@163.com; |
| 111 | uledemode_official | 3193748241@qq.com; |
| 214 | KellersCustomPrints | 5c47d7iqar@privaterelay.appleid.com; |
| 237 | Printorians3D | david19mb@gmail.com; |
| 243 | RetroforgeCreations | retroforge.creations@hotmail.com; |
| 244 | RobaPop | mgentili@me.com; |
| 249 | southcartART | southcart@outlook.com; |
| 254 | SuperHeroArtPrints | j_caspersz1@hotmail.com; |
| 260 | ThundersnailCreates | thundersnailx@gmail.com; |

| 69 | brickcraftersworkshop | q624733030@gmail.com; |
|---|---|---|
| 70 | cyber-craft | kh.cyber@ptc.tax; kh.cyber.pro@ptc.tax; |
| 73 | darkminiatures | jocortess81@gmail.com; |
| 74 | dhgworld | dhgworld@outlook.com; rubyeprovostlvt20@gmail.com; gmxnwtwzimq3802@gmail.com; |
| 76 | g4sky | info@g4sky.net; |
| 77 | gearhomie | Daudau003@gmail.com; haiphankv@gmail.com; tranvandm67@gmail.com; gearhomiepayment@gmail.com; thermasmer@gmail.com; |
| 78 | jeepdecalstore | cddgraphics@gmail.com; |
| 79 | jnlaserdesigns | jnlaserdesign@gmail.com; |
| 80 | linoos | linoos-1@qq.com; 173425002@qq.com; |
| 85 | moveekbuddyshop | danthedork343@gmail.com; stoltenbergharlowbhj32@gmail.com; |
| 87 | otakuplan | zhang18826400923@gmail.com; support@otakuplan.com; paypal@cozsweater.com; Ren Elvy <pufalaw@outlook.com>; |
| 89 | stormmerch | thainv179pro@gmail.com; |
| 90 | tacticalharz | kundendienst@tacticalharz.de; |
| 92 | todordigital | avtandilimakhatadze@gmail.com; customer@todordigital.com; avtandilimakhatadze@gmail.com; |
| 93 | t-shirtbear | merlebs388emjipxshy@gmail.com; |
| 112 | abcbrushes | abcbrushes65@gmail.com; John Eyre <jeyre@savagecrangle.co.uk>; |
| 113 | alexaftermarket | alext.aftermarket@gmail.com; |
| 114 | avihayg9 | yafitbar72@gmail.com; |
| 116 | axis_3d_pro | hello@axis3dpro.com; |
| 117 | back2base-ix | back2baseix@gmail.com; |
| 118 | bambam3d_studio | cucchiellaguido@hotmail.it; |
| 120 | battle_brothers | readyforwar.painting@gmail.com; |

| 121 | battleround | dexlived@live.co.uk; |
|-----|-------------|----------------------|
| 124 | bloodybeast_com | ralph.troll@gmail.com; |
| 126 | christie6153 | tomo_10003@hotmail.com; |
| 128 | dijayas5748 | diasjayasekara675@gmail.com; |
| 129 | donvaletechsales | donvaletech@bigpond.com; |
| 131 | everythingcanada | chantalayles@icloud.com; |
| 132 | frenergymagnets | info@frenergy.com.au; |
| 135 | greyhawktrading | warrengillham@gargoyledistribution.com; |
| 138 | imfadcom | manages@qq.com; |
| 139 | innofinity-worldwide | sami.goodman@innofinity-worldwide.com; |
| 140 | iover_9000i | mantecaza@hotmail.com; |
| 141 | jacksdrawingsgb | jacksdrawingsgb@outlook.com; |
| 142 | k_r_multicase | sales@krmulticase.co.uk; |
| 146 | lower-and-shiner-store | cimensevilay43@gmail.com; |
| 148 | magnet4us | magnet4sale@hotmail.com; |
| 150 | magprint3d | crookslpa@gmail.com; |
| 151 | marpark8902 | mparkitny1980@gmail.com; |
| 154 | misterdollar1328 | niryp1624@gmail.com; |
| 155 | narkuk | zinge@hotmail.com; |
| 156 | navara_cases | sales@navaracases.com; |
| 157 | newworld.discounts | jackiekchong@mail.com; |
| 161 | roamingwanderer | adamryland1977@hotmail.com; |
| 162 | robsvintagecuriosities | RobsCuriosities@gmail.com; |
| 163 | safrig55 | safrigunapala@gmail.com; |
| 167 | solar-e-clips | zapteam@hotmail.co.uk; |
| 169 | tcgtackle | tcgtacklesales@gmail.com; |
| 171 | toonto_47 | toontown263.2@gmail.com; |
| 175 | wargames.shop | wargames2013@qq.com; |
| 177 | willys_minis | willreading1302@gmail.com; |
| 179 | yggdrasil7 | yggdrasiltree88@gmail.com; |
| 180 | zzaaqvw | airgffid@outlook.com; |
| 218 | LeeanderthalSHOP | leeanderthalmakesitall@gmail.com; |
| 277 | Dedert | f.dedert@yandex.ru; tagenblat@gmail.com; |
| 278 | HamsterOver | zelenov.grigory@yandex.ru; nik.tka.a73@gmail.com; |
| 281 | vieke | randy@viesign.be; |